## Commonwealth v. Urey

*David K. Lewis*, Assistant District Attorney, for Commonwealth.

*J. A. Stranahan, 3d*, for defendant.

RODGERS, P. J., March 17, 1959.—Defendant, Donald D. Urey, was charged with operating a motor vehicle at 50 miles an hour in a 35-mile-an-hour zone.

The court finds that: (1) The officer clocked defendant for over a quarter of a mile in the 35-mile-an-hour zone; (2) defendant's speed for 1,226 feet was 50 miles an hour; (3) defendant's speed at the beginning of the quarter mile may not have exceeded the 35-mile limit: (4) defendant does not deny that he may have exceeded the limit over the route involved.

It is defendant's position that since the Commonwealth has not shown that defendant was in violation of the speed limit for the entire quarter of a mile, that we must find defendant not guilty.

Defendant cites the case of Commonwealth v. Hagy, 41 Dauph. 282 (1935), where that court in considering this issue said:

"The essential of the offense is that the violation as to speed must continue for a quarter of a mile."

This case sustains defendant's position but we must respectfully disagree with the holding of the learned court in that matter. The pertinent part of The Vehicle Code in regard to this question is subsection (*d*) of section 1002, which provides in part:

". . . the rate of speed shall be timed, for a distance of not less than one quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation . . .": The Vehicle Code of May 1, 1929, P. L. 905 art. X, sec. 1002, 75 PS §501, as amended.

We suggest that the violation is not that the accused has exceeded the speed limit for one-fourth of a mile. The offense is that he exceeded the speed limit as set forth in section 1002 (*b*).

The obvious reason the legislature requires a quarter mile timing of speed is to assure that the peace officer's automobile is going the same speed as the violator's automobile. The purpose was not to impose a hardship on the Commonwealth or to make a kind of game out of speed violations.

If we were to sustain defendant's position, a driver could operate his car for 50 miles an hour for one-eighth of a mile, drop down to the legal speed for a few yards, go back up to 60 or 70 miles an hour and keep repeating the process at his pleasure, making it impossible for the police officers to obtain a conviction for the obvious violation of the intent of the statute.

Our courts have recognized the efficiency of the tested speedometer and its ability to check the speed of a violation at any particular moment: Commonwealth v. Parish, 138 Pa. Superior Ct. 593, 595.

There remains defendant's argument that we are dealing with a penal statute which must be strictly construed in favor of defendant and against the Commonwealth. We are also bound by section 52(1) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552. It provides:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumption. . . :

"(1) That the Legislature does not intend a result that is absurd. . . ." To interpret The Vehicle Code as defendant suggests would certainly defeat the objectives of the legislature. It would practically guarantee a "result that is absurd".

We therefore enter the following order.

### Order

And now, March 17, 1959, we find defendant guilty and direct that he appear for sentencing when notified to do so by the district attorney.